IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KIDDY KARE PRE SCHOOL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.   20 C 3842 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| THE CITY OF CHICAGO and THE CITY OF | ) | |
| CHICAGO DEPARTMENT OF FAMILY AND | ) | |
| SUPPORT SERVICES, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kiddy Kare Pre School, Inc. has brought a three-count amended complaint against the City of Chicago (the "City") and its Department of Family and Support Services, alleging that defendants' unlawfully denied plaintiff 's application for "Preventative Initiative "funding.   Count I alleges that the defendants' decision violated the Illinois Administrative Code.   Count II alleges a violation of plaintiff's procedural due process rights.   Count III alleges a violation of the Equal Protection Clause.   Defendants have moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) failure to state a claim for relief.   For the reasons described below, the motion is granted.

## BACKGROUND

Plaintiff is a nationally accredited early childhood education provider serving low-income families in some of Chicago's most underprivileged neighborhoods.   It has been operating in the City for over 40 years, and its schools are currently licensed to enroll 691 students, approximately 80% of whom are Latino.   Its learning centers are licensed by the City and the Illinois Department of Children and Family Services.   It relies on state and federal grant funds to

operate.   The City has awarded plaintiff several state and federally funded grants for approximately 17 years, until 2018.   In late 2018, however, the City altered its method of awarding grants, and announced that it would release a Request for Proposal ("RFP"), through which Chicago based providers such as plaintiff could apply for early childhood education program funding, including funding for PI programs.   The City released the extensive RFP on April 2, 2019, which included a May15, 2019 due date.

Plaintiff timely submitted its application for "continuation" funding for its PI programs. It claims to have met all the requirements for PI funding.   Although defendants originally indicated that funding awards would be announced in June 2019, that announcement was delayed until mid- August.   Plaintiff was awarded some grant funding, but alleges that it was not awarded funding for PI, which is a state funding stream that is part of the State of Illinois Early Childhood Block Grant ("ECBG") that funds providers of early learning services to infants and toddlers   0 to 3 years of age.

## DISCUSSION

Defendants move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).   The purpose of such a motion is to test the sufficiency of the complaint, not to judge the merits of the case.   Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990).   When considering the motion, the court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in plaintiff's favor.   McMillan v. Collection Professionals Inc., 455 F.3d 754, 758 (7th Cir. 2006). The complaint must plead sufficient facts to plausibly suggest that plaintiff has a right to relief and raise that possibility above the "speculative level."   Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

2

Counts I & II of the complaint allege that that defendants' failure to approve plaintiff's PI grant application violated the Illinois administrative regulations that govern how the Illinois State Board of Education ("ISBE") awards PI grants, and plaintiff's right to procedural due process. Defendants argue that both claims fail as a matter of law because the regulations apply to ISBE only, and do not govern how defendants process PI applications or create any constitutionally recognized property interest. The court agrees with defendants.

Plaintiff's PI programs are funded through the Illinois Block Grant, which is a program set out in the Illinois School Code designed to "permit greater flexibility and efficiency in the distribution and use of certain State funds available to local education agencies for the improvement of the quality of educational services pursuant to locally established priorities." 105 ILCS 5/1C-1. ISBE is tasked with awarding school districts block grants, and has authority to "adopt rules and regulations necessary to implement" that task. 105 ILCS 5/1C-2(a). The Act provides that an "Early Education Block Grant" shall be created by combining the "Preschool Education, Parental Training and Prevention Initiative. ISBE is to distribute funds to school districts and other entities (such as plaintiff) on a competitive basis, "except that [ISBE] shall award to a school district having a population exceeding 500,000 inhabitants [ Chicago Public Schools ("CPS")] 37% of the funds in each fiscal year." Id. at §5/1C-2(c).

Consistent with its authority, ISBE has implemented a comprehensive scheme of regulations to establish "the procedures and criteria for the approval of proposals submitted to [ISBE] by eligible applicants for grants to assist in establishing early childhood educations funded through the Early Childhood Block Grant authorized by Section 1C-2 of the School Code." 23 Ill. Adm. Code § 235.10. The ISBE regulations distinguish between "continuing

3

program" applications and "new or expanding program" applications.   See 23 Ill. Adm. Code § 235.20, 235.60.   The regulations provide that applications for "Continuing Programs" seeking funding to continue PI programs beyond the initial grant period "shall be approved provided that" five specified criteria have been met.   Id. at § 235.60(b) (emphasis added).   Grants for new or expanding programs, however, are offered only in years in which the level of available funding is such that new programs can be supported along with those currently funded programs seeking continuation funding.   Id. at §235.20(a).

Plaintiff had received Block Grant funds to operate its PI program for 17 consecutive years.   It timely responded to defendants' RFP by applying for "continuation" funding.   The entire premise of its claims in Counts I and II is that § 235.60(b) requires defendants to approve its application because plaintiff certified that the 5 requirements listed in the section were satisfied.   The problem with this argument is that the regulations in § 235 govern grant applications to and awarded by ISBE, not the City.   The regulations plaintiff relies on were promulgated by ISBE to implement how ISBE approves PI grant proposals.   That purpose is clearly and unambiguously articulated in § 235.10, titled "Purpose; Eligible Applicants" and which provides: "This Subpart A establishes the procedures and criteria for the approval of proposals submitted to the State Board of Education [ISBE] by eligible applicants . . . ."   Under Illinois law, when the language of a regulation "is clear, it must be applied as written without resort to aids or tools of interpretation."   DeLuna v. Burciaga, 223 Ill.2d 49, 59 (2006).

Neither plaintiff nor CPS applied to ISBE for block grant funding. Plaintiff applied to CPS (through defendants) for its funding.   Under the School Code, CPS was not required to apply for Block Grant Funding; it automatically received 37% of the available funds.   105 ILCS

4

5/1C-2 (c).   Nothing in the statute dictates how CPS was to distribute those funds. And the regulations, which do not apply, allow eligible applicants to subcontract with a private entity that would otherwise be eligible.   Nothing in the regulations dictates how the applicant chooses its subcontractor.

Unable to get around the unambiguous wording of both the statute and regulations, plaintiff argues that CPS's agreements with defendants, by which defendants administer CPS's block grant, requires defendants to comply with the regulations.   This is not what is alleged in the complaint, however, and in any event, plaintiff has been unable to identify any provision in any agreement that places such a requirement on defendants.   At most, plaintiff identifies provisions that requires CBOs, such as plaintiff' with whom defendants contract to provide services, to comply with the eligibility requirements in the regulations.

Finally, plaintiff argues that the court must accept as true its allegation that defendants stand in the shoes of ISBE as the Block Grant administrator for Chicago-based providers, and thus must follow the School Code and ISBE regulations for the administration for Black Grants. Not so.   The court must accept as true all well-pleaded factual allegations.   Carlson v. CSX Transp., Inc., 758 F.3d 819, 826 (7th Cir. 2014).   The court need not accept as true legal conclusions such as plaintiff's allegation.   Munson v. Gaetz, 673 F.3d 630, 632 (7th Cir. 2012). Nothing in either the School Code or the ISBE regulations supports plaintiff's allegation. Consequently, the court concludes that defendants were not and are not required to comply with the regulations at issue.   As a result, Count I fails to state a claim.   And, because the regulations do not apply, plaintiff cannot rely on § 235.60 to establish a constitutionally protected property interest.   Consequently, Count II also fails to state a claim.

In Count III plaintiff alleges that defendants' decision to deny it PI funding violated plaintiff's equal protection rights. This count apparently contains two separate claims. The first claim alleges that defendants had no rational basis to refuse to apply the administrative regulations when awarding Block Grant funds. As shown above, however, defendants had no obligation to apply those regulations. Thus, plaintiff cannot state a claim for the defendants' failure to apply those regulations.

Next, plaintiff attempts to plead a "class of one" equal protection claim. Such a claim is "based on the principle that similarly situated people must be treated alike unless there is a rational basis for treating them differently." Chicago Studio Rental, Inc. v. Ill. Dep't of Commerce, 940 F.3d 971, 979 (7th Cir. 2019). Plaintiff alleges "[o]n information and belief" that defendant awarded PI grant funds in an arbitrary manner to providers similarly situated to plaintiff and had no rational basis to deny funds to plaintiff. This allegation is insufficient to state a claim. "[E]ven at the pleading stage a class-of-one plaintiff must 'negate any reasonably conceivable state of facts that could provide a rational basis.'" Jackson v. Village of Western Springs, 612 Fed. Appx. 842, 847 (7th Cir. 2015) (quoting Scherr v. City of Chicago, 757 F.3d 593, 598 (7th Cir. 2014)). In the instant case, the RFP specifically indicated a priority to fund providers that applied for both federal and state funding streams. Plaintiff elected not to apply for both, leaving defendants with a rational basis for selecting providers ahead of it. Consequently, the court concludes that Count III fails to state a claim.

## **CONCLUSION**

For the reasons described above, defendants' motion to dismiss [Doc. 36] is granted.


**ENTER:**        **December 22, 2020**


**Robert W. Gettleman**
**United States District Judge**